1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16

| | |
|---|---|
| TANYA LEIGH FROOM, | CASE No. 12cv276-JLS (DHB) |
| Plaintiff, | **REPORT AND RECOMMENDATION REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| CAROLYN W. COLVIN,[1] Commissioner of Social Security, | **[ECF Nos. 21 and 24]** |
| Defendant. | |

17

## I. INTRODUCTION

18
19
20
21
22
23
24
25
26
27

    On February 2, 2012, Plaintiff Tanya Leigh Froom filed a Complaint pursuant to section 405(g) of the Social Security Act ("SSA") requesting judicial review of the Commissioner of the Social Security Administration's ("Defendant") denial of her claim for disability benefits.  (ECF No. 1.)  On August 27, 2012, Defendant filed an Answer (ECF No. 13) and the Administrative Record ("AR").  (ECF No. 15.)  On October 25, 2012, Plaintiff filed a Motion for Summary Judgment, seeking reversal and remand.  (ECF No. 21.)  Plaintiff contends the Administrative Law Judge ("ALJ") committed reversible error by failing to properly evaluate the opinion of the examining physician, by rejecting the opinions of two treating physicians, and by finding Plaintiff

28

    [1] The Court substitutes Carolyn W. Colvin in place of Michael J. Astrue as the Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

not credible.  On November 14, 2012, Defendant filed a Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment. (ECF No. 24.) Plaintiff filed an Opposition on November 28, 2012. (ECF No. 25.)

After careful consideration of the Administrative Record and the applicable law, the Court hereby **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED**, and that Defendant's Cross-Motion for Summary Judgment be **DENIED**.

## II.  PROCEDURAL BACKGROUND

On February 2, 2009, Plaintiff filed her initial application for Supplemental Security Income ("SSI").  (AR 210-214.)  Plaintiff alleged a disability beginning on September 14, 2007.  (AR 227.)  Plaintiff's application was based on a multi-level lumbar disc injury. (AR 231.) Plaintiff's application was initially denied on May 18, 2009, (AR 82-86) and denied upon reconsideration on September 8, 2009. (AR 88-92.) Thereafter, Plaintiff filed a timely request for a hearing before an ALJ.  (AR 93-94.)

On August 5, 2010, ALJ Eve Godfrey conducted a hearing.  (AR 53-74.) Plaintiff appeared at the hearing without representation.  The ALJ heard testimony from Plaintiff and medical expert Dr. Peter Schosheim.  Plaintiff indicated that the ALJ did not have some of her recent medical records. (AR 63-64.)  Therefore, the ALJ continued the hearing to allow Plaintiff to find an attorney and to provide the updated medical records.  (AR 73.)

On February 16, 2011, a second hearing was held before ALJ Godfrey.  (AR 26-52.)  Prior to the hearing, Plaintiff submitted additional medical records. (AR 435-528.) Plaintiff appeared at the second hearing and was represented by Harold McNeil, Esq. (AR 26.)  Plaintiff testified at the hearing.  (AR 28-51.)  Medical expert Dr. Schosheim and vocational expert Connie Guillory also testified.  (*Id.*)

On March 21, 2011, ALJ Godfrey issued a written decision finding Plaintiff was not disabled as defined by the Social Security Act.  (AR 10-25.)  The decision became final when the Appeals Council adopted ALJ Godfrey's findings on December 2, 2011. (AR 1-5.)  Thereafter, Plaintiff timely filed this action.  (ECF No. 1.)

### III. LEGAL STANDARDS

**1.** **Determination of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the applicant incapable of performing the work she previously performed or any other substantially gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), (2)(A).  A claimant must meet both requirements to be classified as disabled.  *Id.*

The Commissioner makes the assessment of disability through a five-step sequential evaluation process.  The five steps are:

1. Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof during the first four steps, and the Commissioner bears the burden at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999).  At step five, the Commissioner must show the claimant can perform work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functioning capacity, age, education, and work

1  experience." *Id*. at 1100.

2  **2.  Scope of Review**

3  Sections 405(g) and 1383(c)(3) of the Social Security Act allows unsuccessful

4  claimants to seek judicial review of the Commissioner's final agency decision. 42

5  U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Court must

6  affirm the Commissioner's decision unless it "is not supported by substantial evidence

7  or is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). *See*

8  *also Uklov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).

9  "Substantial evidence means more than a scintilla but less than a preponderance."

10 *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which,

11 considering the record as a whole, a reasonable person might accept as adequate to

12 support a conclusion." *Id.* The Court must consider the record as a whole, and weigh

13 both the evidence that supports and detracts from the ALJ's conclusion. *Frost v.*

14 *Barnhart*, 314 F.3d 359, 366-67 (9th Cir. 2002) (quoting *Jones v. Heckler*, 760 F.2d

15 993, 995 (9th Cir. 1985). The Court must uphold the denial of benefits if the evidence

16 is susceptible to more than one rational interpretation, one of which supports the ALJ's

17 decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

18 Even if the Court finds that substantial evidence supports the ALJ's conclusions,

19 the Court must set aside the decision if the ALJ failed to apply the proper legal

20 standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573

21 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits the Court to enter a judgment

22 affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g).

23 The matter may also be remanded to the Social Security Administration for further

24 proceedings. *Id.* After a case is remanded and an additional hearing is held, the

25 Commissioner may modify or affirm the original findings of fact or the decision. *Id.*

26 ///

27 ///

28 ///

# IV.  FACTUAL BACKGROUND

Plaintiff alleges that she became disabled as of September 14, 2007 from a multi-level lumbar disc injury.  (AR 231.)  Prior to her alleged disability, Plaintiff had been employed as a shipping and receiving clerk and as a restaurant server.  (AR 232.)

**A.    Medical Evidence**

**1.    Treating Physicians' Opinions**

**a.    Dr. Farshad Ahadian**

Dr. Farshad Ahadian began treating Plaintiff for her back pain in February 2008. (AR 584.)  Dr. Ahadian is a pain management specialist and surgeon, who performed several procedures on Plaintiff, including a laser disc decompression surgery and nerve oblation procedures.  (AR 38-39, 317-318, 358, 360, 367-69.)  In December 2010, Dr. Ahadian completed a Physical Residual Functional Capacity Assessment stating Plaintiff was diagnosed with lumbar radiculopathy and lumbar spondylosis.  (AR 520-523.)  According to Dr. Ahadian's assessment, Plaintiff is limited to lifting less than 5 pounds, standing or walking less than 60 minutes, and sitting less than 2 hours of an 8 hour day.   (AR 520-521.)   He further noted Plaintiff cannot balance, stoop, crouch/squat, or crawl.  (AR 522.) Dr. Ahadian's report did not indicate what objective tests, if any, supported his conclusions.  (AR 523.)

In May 26, 2011, Dr. Ahadian completed a second Physical Residual Functioning Capacity questionnaire.  (AR 584-588.)  He added his clinical findings to the report, including that Plaintiff has limited range of motion in her lumbar spine, and weakness in her left leg.  (AR 584.)  He also indicated Plaintiff's condition was "likely to be chronic and long term" and described her pain as "severe" and "consistent." (AR 584.) He noted Plaintiff was limited sitting and standing/walking less than 2 of 8 hours.  (AR 586.)  He also indicated Plaintiff could lift less than 10 pounds.  (AR 587.)

**b.    Dr. Lillian Alvarez-Martinez**

Dr. Alvarez-Martinez began treating Plaintiff in August 2010.  (AR 525.)  In December 2010, Dr. Alvarez-Martinez submitted a Physical Residual Functional

Capacity Assessment stating Plaintiff was diagnosed with degenerative disc disease, spinal stenosis, and tendinosis of the right shoulder. (AR 525.) Dr. Alvarez-Martinez indicated that Plaintiff is limited to lifting less than 5 pounds and sitting less than 60 minutes in a 8 hour day. (AR 526-527.) She further noted that Plaintiff can stand no more than 30 minutes and sit no more than 15 minutes without increasing pain. (AR 527.) Dr. Alvarez-Martinez also indicated that Plaintiff cannot balance, stoop, kneel, crouch/squat, or crawl. (AR 526.) Dr. Alvarez-Martinez noted that her findings were supported by Plaintiff's MRI and X-Ray results. (AR 528.)

Although Dr. Alvarez-Martinez's Residual Functional Capacity Assessment was before the ALJ, her treatment records were not. Plaintiff subsequently provided the treatment records to the Appeals Council. (AR 5, 529-588.)

### 2. Examining Physician Dr. Jonathan Nissanoff's Opinion

On April 13, 2010, Plaintiff was evaluated by examining physician, Dr. Jonathan Nissanoff. (AR 430-433.) Dr. Nissanoff is a board certified orthopedist. (AR 39, 430.) Dr. Nissanoff diagnosed Plaintiff with lumbar disc herniation and lumber disc desiccation. (AR 423.) Dr. Nissanoff noted that Plaintiff's MRI shows disc herniation at L4-5, with desiccation impinging on the thecal sac. (AR 430.) Based on his examination, Dr. Nissanoff indicated that Plaintiff should be able to stand and walk 4 of 8 hours, sit 4 of 8 hours, and lift 10 pounds occasionally/10 pounds frequently. (AR 432-33.) He also stated Plaintiff is restricted to no bending, stooping, lifting, crawling, crouching, or kneeling. (AR 433.)

### B. __The Hearing__

### 1. Plaintiff's Testimony

Plaintiff testified at both hearings before the ALJ on August 5, 2010 and on February 16, 2011. Plaintiff testified that she stopped working in September 2007 because of her back pain. (AR 70-71.) Plaintiff stated that she does not drive. (AR 67.) When asked if she was able to do chores at home, Plaintiff stated "I don't do anything" and that she has "to ask for help." (AR 67.) Plaintiff said she doesn't take out the trash,

or clean the floor.  (AR 67.)  Plaintiff also stated that when she goes grocery shopping, others get the items off the self, and load them for her.  (AR 67.)  Plaintiff testified that she has two school-aged children, and they assist her.  (AR 67.)  At the first hearing, Plaintiff reported that she uses a cane for walking.  (AR 66-67.)  By the second hearing, however, Plaintiff had discontinued use of the cane because it had caused her foot to break.  (AR 41.)

### 2.    Consulting Physician Dr. Peter Schosheim's Testimony

The medical expert, Dr. Peter Schosheim, also testified at both hearings.  (AR 30-44; 68-72.)  At the first hearing, Dr. Schosheim opined that based on the medical evidence of record, Plaintiff has degenerative disk disease at L4-5 without significant neurological findings, and no associated muscle weakness or reflex changes.  (AR 68-70).  Based thereon, Dr Schosheim found Plaintiff's impairments did not meet or exceed the listings in 20 C.F.R. 404, Subpart P, App.1.  (AR 70.)  The ALJ asked Dr. Schosheim to render a residual functional capacity ("RFC") for what Plaintiff could do despite her impairments.  (AR 70.)  Dr. Schosheim stated that Plaintiff could lift 20 pounds occasionally/10 pounds frequently.  She could stand or walk for 4 of 8 hours and sit for 6 of 8 hours.  He further stated Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  However, she could never climb ladders, ropes, or scaffolds, and would have to avoid heights, hazards, vibration, and machinery.  (AR 71.)

At the second hearing, the ALJ asked Dr. Schosheim whether his initial opinion had changed based on the additional documents provided by Plaintiff.  (AR 30-31.)  Dr. Schosheim stated that he still found Plaintiff did not meet or exceed the listings.  (AR 31.)  However he slightly revised his RFC.  Dr. Schosheim reduced the amount of time Plaintiff could stand or walk from 4 of 8 eight hours to 2 of 8 hours, with 6 hours of sitting.  (AR 31.)  He also reduced the amount she could lift from 20 pounds occasionally/10 pounds frequently, to 10 pounds occasionally/10 pounds frequently.  (AR 31.)

1  Next, Plaintiff's attorney questioned Dr. Schosheim. (AR 32-39.) In response

2  to his questions, Dr. Schosheim explained that despite the treating physicians' more

3  restrictive opinions,[2] he found Plaintiff was capable of doing sedentary work based on

4  the objective evidence in the record. Specifically, he cited Plaintiffs MRI scans and the

5  opinion of examining physician, Dr. Nissanoff. (AR 33.) Dr. Schosheim also noted

6  that neither treating physician was an orthopedist, but Dr. Nissanoff was. (AR 38.)

7  ### 3.  Vocational Expert Connie Guillory's Testimony

8  Vocational expert Connie Guillory testified at the hearing on February 16, 2011.

9  (AR 44-51.) Ms. Guillory answered questions posed by Plaintiff's attorney and the ALJ

10 regarding two hypotheticals. First, Plaintiff's attorney asked Ms. Guillory to consider

11 a hypothetical claimant with restrictions similar to those found in Dr. Alvarez-

12 Martinez's opinion. (AR 47.) Ms. Guillory testified that a person with Plaintiff's

13 background, who could lift a maximum of 5 pounds on occasion, and who could stand

14 less than 30 minutes out of 8 hours, and sit less than 15 minutes out of 8 hours, would

15 be unable to perform her past work or any other work. (AR 46-47.) Next, the ALJ

16 asked Ms. Guillory to consider a hypothetical claimant with restrictions similar to those

17 found in Dr. Nissanoff's opinion. (AR 46.) Ms. Guillory stated that a person with

18 Plaintiff's background who could lift 10 pounds occasionally and could sit 4 hours and

19 stand 4 hours would not be able to perform Plaintiff's past work, but would be able to

20 perform sedentary jobs. (AR 46.) Ms. Guillory further testified that a significant

21 number of jobs existed in the national economy that the person in the second

22 hypothetical could perform. (AR 46.) The types of jobs included production inspector,

23 sedentary assembler, and production assistant. (AR 46.)

24 / / /

25 / / /

26

27  [2] Dr. Ahadian's RFC limited Plaintiff to standing or walking less than 60 minutes, and sitting less than 2 of 8 hours. (AR 521-22.) Dr. Alvarez-Martinez's RFC limited Plaintiff to sitting less than

28 60 minutes out of an 8 hour day. (AR 526.) Both doctors limited Plaintiff to lifting less than 5 pounds. (AR 521, 527.)

**C.    The ALJ's Findings**

The ALJ followed the five-step sequential evaluation process in assessing whether Plaintiff is disabled. (AR 13-20.)  At the first step, the ALJ found Plaintiff had not engaged in substantial gainful activity during the relevant time period. (AR 15.)  At the second step, the ALJ determined Plaintiff suffered from the severe impairments of disc desiccation without disc height loss at L4-5, mild disc desiccation and disc height loss with broad-based mild disc bulge at L5-S1.  (AR 15-17.)  At the third step, the ALJ determined Plaintiff's severe impairment or combination of impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 17.)  Therefore, the ALJ proceeded to step four.

At the fourth step, the ALJ formulated Plaintiff's residual functional capacity ("RFC").  The RFC details the maximum amount of work a claimant is able to do based on all of the relevant evidence in the record.  20 C.F.R. § 404.1545(a).  The RFC is used at step four to determine if the claimant can do her past relevant work, and it is used at step five to determine whether the claimant can do any other work.  *Id.*  The ALJ determined Plaintiff had the residual functional capacity to lift and carry 10 pounds occasionally/10 pounds frequently, and to stand and/or walk 4 of 8 hours and to sit 4 of 8 hours.  However, Plaintiff cannot climb ladders, ropes or scaffolds, and must avoid heights, hazards, and vibratory tools.  (AR 17.)  In assessing Plaintiff's RFC, the ALJ rejected Dr. Ahadian's opinion that Plaintiff is limited to lifting a maximum of 5 pounds (AR 18), but did not discuss Dr. Alvarez-Martinez's opinion.  The ALJ stated she found the opinion of Dr. Schosheim persuasive.  The ALJ noted that Dr. Schosheim had the opportunity to consider the totality of Plaintiff's medical record, and that his opinion was consistent with that of Dr. Nissanoff.  (AR 18.)  The ALJ also found Plaintiff's statements regarding her pain were not credible.  (AR 18.)  Based on the RFC, the ALJ concluded Plaintiff was not able to do her past relevant work.  (AR 19.)

At the fifth step, the ALJ considered Plaintiff's age, education, work experience, and residual functional capacity, and determined there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform.  (AR 19-20.)  Specifically, the ALJ found Plaintiff is capable of performing the work of a production inspector, sedentary assembler, and production assistant.  (AR 20.)  Therefore, the ALJ concluded Plaintiff was not disabled.  (AR 20.)

## V.  DISCUSSION

In her Motion for Summary Judgment, Plaintiff contends the ALJ committed four reversible errors: (1) failing to properly evaluate the opinion of the examining physician Dr. Nissanoff; (2) failing to offer any rationale for rejecting the opinion of treating physician Dr. Alvarez-Martinez; (3) failing to properly evaluate the opinion of treating physician Dr. Ahadian; and (4) improperly rejecting Plaintiff's testimony regarding her pain.  (ECF No. 21.)  Plaintiff requests the case be reversed and remanded for the payment of benefits.  (*Id.* at 13.)  In the Cross-Motion for Summary Judgment, Defendant counters that the ALJ's decision was well supported and should be upheld. (ECF No. 24.)

### 1.  **The ALJ's Evaluation of the Examining Physician's Opinion**

Plaintiff initially argued the ALJ erred because although she accepted Dr. Nissanoff's opinion, the ALJ's RFC is not consistent with his opinion.  (ECF No. 21 at 3.)  Specifically, Plaintiff argues the ALJ failed to include Dr. Nissanoff's postural limitations of "no bending, stooping, lifting, crawling, crouching, [] or kneeling" in her RFC.  (*Id.*)  In response, Defendant points out that the ALJ did in fact adopt Dr. Nissanoff's opinion, and relied on it as the basis of her hypothetical question to the vocational expert.  (ECF No. 24 at 4.)  The ALJ directed the vocational expert to Dr. Nissanoff's report (which included the postural limitations) and asked whether an individual with the abilities outlined by Dr. Nissanoff could perform any type of work. (AR 46.)  The vocational expert testified that such an individual could perform

sedentary work.[3]  (AR 46, 48.)  In turn, the ALJ concluded Plaintiff could perform sedentary work.  (AR 20.)

In her Reply brief, Plaintiff concedes this argument.  (ECF No. 25 at 5 n.1.)  Plaintiff states that Defendant's argument "is well taken," and admits that any error by the ALJ in failing to include Dr. Nissanoff's complete limitations in her RFC is "harmless."  (*Id.*)  "A decision of the ALJ will not be reversed for errors that are harmless."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Accordingly, the Court concludes that the ALJ's evaluation of Dr. Nissanoff's opinion does not require reversal or remand.

**2.      The ALJ's Rejection of Treating Physician, Dr. Alvarez-Martinez's Opinion**

Plaintiff contends the ALJ failed to provide any reasons for rejecting the opinion of treating physician Dr. Alvarez-Martinez.  Plaintiff notes that Dr. Alvarez-Martinez's RFC, dated December 23, 2010 was provided to the ALJ prior to the second hearing.  (AR 525-528.)  However, the ALJ's decision does not mention Dr. Alvarez-Martinez's opinion at all.  (*See* AR 13-20.)  In response, Defendant states that Dr. Alvarez-Martinez's treatment records were not before the ALJ.  Therefore, Defendant argues the ALJ properly refused to consider Dr. Alvarez-Martinez's opinion because there was no medical evidence that she was treating Plaintiff, or any indication what the nature of the relationship was, or what type of treatment she was providing to Plaintiff.

It appears Plaintiff did not submit her treatment records from Dr. Alvarez-Martinez to the ALJ.  However, the results of an MRI scan that had been ordered by Dr. Alvarez-Martinez was included in the record before the ALJ.  (AR 518-519.)  And Dr. Alvarez-Martinez's RFC specifically referred to Plaintiff's MRI results as an objective test that supported her opinion.  (AR 528.)  Therefore, there was some evidence in the

---

[3] Two of the pages of the hearing transcript were placed out of order in the Administrative Record.  Page 19 of the transcript (AR 46) preceded page 18 of the transcript (AR 47).  It appears this misalignment of pages may have caused some confusion as to the state of the record.

record before the ALJ that Dr. Alvarez-Martinez was a treating physician who was seeing Plaintiff for her back pain.

Further, Plaintiff subsequently provided her treatment records from Dr. Alvarez-Martinez to the Appeals Council.  (AR 5, 529-588.)   The Appeals Council considered the new evidence, and incorporated it into the record.  (AR 2, 5.)  However, the Appeals Council found the additional information did not "provide a basis for changing the Administrative Law Judge's decision."  (AR 2.)

When a claimant submits evidence for the first time to the Appeals Council, and the Appeals Council considers it in affirming the ALJ's decision, "the new evidence is part of the administrative record, which the district court must consider in determining whether the ALJ's decision is supported by substantial evidence."  *Brewes v. Commissioner of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 1993).  *See also Harman v. Apfel*, 211 F.3d 1172, 1180 ("We properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review."); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).  Therefore, this Court must consider the treatment records from Dr. Alvarez-Martinez in reviewing the ALJ's decision.

In assessing a disability claim, an ALJ may rely on medical opinions of three types of physicians: "(1) those who treat the claimant (treating physicians[4]); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The Commissioner applies a hierarchy of deference to these three types of opinions.  The opinion of a treating doctor is entitled to the greatest weight.  *Id.* at 830; 20 C.F.R. § 404.1527(c)(2).  In turn, the opinion of an examining physician is entitled to greater weight than a nonexamining physician.

---

[4] A treating physician is one who has provided treatment to a claimant on more than one occasion.  A physician qualifies as a treating source if the claimant sees her with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  *Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003).

*Lester*, 81 F.3d at 830.   However, "[t]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

A treating physician's opinion is given the greatest weight because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).   However, the opinion of a treating physician is not necessarily conclusive as to either a physical condition or the ultimate issue of disability.   *Id.*   If the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or is inconsistent with other substantial evidence in the record, it is not entitled to controlling weight.   *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007).   In that event, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to accord the opinion.   *Orn*, 495 F.3d at 632 (stating that a finding that a treating physician's opinion is not well supported or inconsistent with other substantial evidence in the record "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.   Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527.").   The factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and  (6) any other factors brought to the attention of the ALJ which tend to support or contradict the opinion.   20 C.F.R. § 404.1527(c)(2)(I)-(ii), (c)(3)-(6).

Opinions of treating physicians may only be rejected under certain circumstances.  *Lester,* 81 F.3d at 830.   In *Lester*, the Ninth Circuit held an ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating physician.   *Id.* at 830-31.   Even if the opinion of a treating physician is contradicted by

1    another source, it can only be rejected for "specific and legitimate reasons" that are

2    "supported by substantial evidence in the record." *Id.* at 830.

3         After considering the record as a whole, including Plaintiff's additional medical

4    records that show Dr. Alvarez-Martinez was a treating physician (AR 530-539), the

5    Court finds the ALJ erred in disregarding her opinion.  In order for the ALJ to discount

6    a treating physician's opinion and not accord it controlling weight, the ALJ must give

7    good reasons.  Here, the ALJ did not provide any reasons for rejecting Dr. Alvarez-

8    Martinez's opinion.  In fact, the ALJ's decision does not mention Dr. Alvarez-Martinez

9    at all.  The ALJ therefore failed to comply with the regulations setting forth how to treat

10   medical opinions. *See* 20 C.F.R. § 404.1527 (c)(2) ("We will always give good reasons

11   in our notice of determination or decision for the weight we give your treating source's

12   opinion.").

13        Accordingly, the Court concludes that the ALJ erred as a matter of law in not

14   giving Dr. Alvarez-Martinez's opinion controlling weight because the ALJ did not

15   provide "specific and legitimate reasons" that are "supported by substantial evidence

16   in the record" for disregarding her opinion.

17        **3.     The ALJ's Rejection of Treating Physician Dr. Ahadian's Opinion**

18        Plaintiff next argues the ALJ failed to properly evaluate the opinion of Dr.

19   Ahadian.  Dr. Ahadian opined that Plaintiff was limited to lifting and carrying 5 pounds,

20   standing/walking less than 60 minutes, and sitting less than 2 hours.  (AR 521-522.)

21   Plaintiff contends Dr. Ahadian's treating opinion in this regard should have been

22   afforded controlling weight.  Defendant counters that the ALJ gave good reasons for

23   rejecting this aspect of Dr. Ahadian's opinion.  Defendant notes the ALJ found there

24   were "no physical examination findings in [Dr. Ahadian's] reports to support these

25   restrictions." (AR 17.)  Defendant also argues the ALJ properly considered the fact that

26

27

28

Dr. Ahadian is not an orthopedist, whereas Dr. Nissanoff and Dr. Schosheim[5] are.

As set forth above, the opinion of a treating physician must be given controlling weight unless it is not supported by medically acceptable diagnostic techniques or is inconsistent with other substantial evidence in the record. *Orn*, 495 F.3d at 631-32. If the ALJ finds a treating physician's opinion is not well supported or inconsistent with the record, the opinion is not entitled to 'controlling weight,' but still must be weighed using the factors listed in 20 C.F.R. § 404.1527(c). *Id*. at 632. One of the reasons the ALJ gave for rejecting Dr. Ahadian's opinion was that it was not supported by objective findings. (AR 17.) The ALJ also indicated Dr. Ahadian's opinion was given lesser weight because he is "a pain management physician and not an orthopedist" and the opinions of the orthopedists, Dr. Schosheim and Dr. Nissanoff, were supported by the record and more persuasive. (AR 18-19.) These are proper considerations. *Holohan v. Massanari*, 246 F.3d 1195, 1202-03, n.2 (9th Cir. 2001); *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); 20 C.F.R. § 404.1527(c)(2), (4), (5).

Plaintiff argues the ALJ's rationale that Dr. Ahadian's opinion was not supported by objective findings lacks merit because Dr. Ahadian "did attach a December 14, 2010, MRI to his report." (ECF No. 25 at 5.) Upon review of the record, it appears the MRI result and Dr. Ahadian's report were submitted to the ALJ together. (AR 517-523.) However, it is not clear that Dr. Ahadian actually attached the MRI result to his report, or that he had the MRI result before him when he prepared his report. For instance, the MRI result (AR 518-519) precedes Dr. Ahadian's opinion (AR 520-523) and the MRI result and Dr. Ahadian's opinion are assigned different exhibit numbers. Moreover, Dr. Ahadian's opinion makes no reference to the MRI result. (AR 523.) It is noteworthy that the section of the report is left blank where Dr. Ahadian could have indicated which

---

[5] Plaintiff argues that Dr. Schosheim's opinion should be discounted entirely because his California medical license has been canceled for at least five years. (ECF No. 25 at 8) Although his California license is inactive, Dr. Schosheim's CV indicates his Florida license is active. (AR 195.)

1    objective tests in Plaintiff's file supported his conclusions.  In contrast, Dr. Alvarez-
2    Martinez' report specifically references an MRI and X-Ray as objective findings
3    supporting her opinion.  (AR 528.)   Therefore, the Court cannot determine with
4    certainty whether Dr. Ahadian's opinion was based on the MRI result.

5            However, following the ALJ's decision, Plaintiff provided  the Appeals Council
6    with a supplemental opinion from Dr. Ahadian. (AR 583.) Dr. Ahadian's supplemental
7    report is more detailed than his initial report and contains a discussion of the clinical
8    findings and objective signs that support his opinion.  (AR 584-588.)  The Appeals
9    Council considered the new evidence, but found it did not provide a basis for changing
10   the ALJ's decision. (AR 2, 5.) Because Dr. Ahadian's supplemental report "relates to
11   the period on or before the ALJ's decision" the Court must consider it in determining
12   whether the ALJ's decision is supported by substantial evidence. *Brewes*, 682 F.3d at
13   1157, 1162.  *See also Harman*, 211 F.3d at 1180; *Ramirez*, 8 F.3d at 1452.

14           When the Court looks at the whole record, including Dr. Ahadian's supplemental
15   report, it finds the ALJ's decision is not supported by substantial evidence.
16   Unfortunately, when the ALJ wrote her decision Dr. Ahadian's more detailed opinion
17   was not part of the record for consideration.   However, that opinion is now part of the
18   record and must be specifically addressed before it can be rejected.  There may or may
19   not still be evidence in the record that the ALJ can rely on to render the required
20   legitimate and specific reasons for discounting Dr. Ahadian's opinion.  However, as the
21   Ninth Circuit has recognized, the ALJ is in a better position than this Court to perform
22   that task. *See McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).

23           In sum, in light of the entire record, including the additional evidence submitted
24   to the Appeals Council, the Court concludes the ALJ's decision to reject Dr. Ahadian's
25   opinion is not supported by substantial evidence.

26   / / /
27   / / /
28   / / /

### 4.    The ALJ's Rejection of Plaintiff's Pain Testimony

Finally, Plaintiff argues the ALJ improperly rejected her pain and limitations testimony.  Defendant counters that the ALJ provided numerous reasons that justified finding Plaintiff not credible.

The credibility of a claimant's testimony regarding subjective pain is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  Second, if the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so.  *Id.*  "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'"  *Turner v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).  "It is not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible."  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  Moreover, the ALJ may not discredit a claimant's testimony of pain solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence").  "In weighing a claimant's credibility," the ALJ may consider the "inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work records, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains."  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ found Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms." (AR 18.)  However, she concluded Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 18.)  Because the ALJ found Plaintiff met the first step of the test, the issue is whether the ALJ provided "specific, clear and convincing reasons" for the adverse credibility finding.  *See Vasquez*, 572 F.3d at 591.  The Court finds she did not.

The ALJ's conclusory statement that Plaintiff's statements were not credible is insufficient because it fails to specify what pain testimony is not credible and what facts in the record lead to that conclusion.  Defendant contends the ALJ's decision identified four reasons for discounting Plaintiff's testimony and lists the evidence it believes supports the ALJ's conclusion.[6] (ECF No. 24 at 7.)  However, the ALJ's opinion itself does not specifically articulate these as the reasons the ALJ discredited Plaintiff's testimony.  "'If the decision on its face does not adequately explain how a conclusion was reached, that alone is grounds for a remand.   And that is so even if [the Administration] can offer proper post hoc explanations for such unexplained conclusions.'"  *Barbato v. Commissioner of Social Sec. Admin.*, 923 F.Supp. 1273, 1276 n.2 (C.D. Cal. 1996) (citation omitted).  *See also Embry v. Brown*, 849 F.2d 418, 421 (9th Cir. 1988) (the ALJ must do more than offer his conclusions).

The Court notes that the ALJ summarized Plaintiff's medical evidence and stated "[i]n terms of the claimant's alleged inability to lift more than five pounds, the undersigned finds the testimony of the medical expert to be persuasive." (AR 18.)  To the extent this statement indicates the ALJ's rationale for discrediting Plaintiff, it is

---

[6]The reasons cited by Defendant are: "(1) Plaintiff's treating physician Laurence M. McKinely, M.D., reported that test results did not explain Plaintiff's complaints of severe and debilitating pain . . . (2) Likewise, regarding Plaintiff's assertion that she could not lift more than five pounds, the ALJ properly considered that two orthopedists found otherwise and that their testimony was more persuasive . . . (3) Plaintiff's allegations of significant limitations are belied by her extensive daily activities . . . (4) The ALJ also considered that Plaintiff had no evidence of cognitive impairment from pain or any other cause."  (ECF No. 24 at 7.)

insufficient as a matter of law.  *Rollins*, 261 F.3d at 857; *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it.").

Another possible explanation why the ALJ discredited Plaintiff's testimony is that Plaintiff can perform some daily activities.  The ALJ's decision cited a psychiatric report that indicated Plaintiff's daily activities include grocery shopping, cooking, laundry and child care. (AR 18.)  The ALJ may consider the claimant's daily activities, but the ALJ must make specific finding relating the transferability of the daily activities to a work setting in order to conclude that the claimant's daily activities warrant an adverse credibility determination.  *Orn*, 495 F.3d at 639; *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1999).

Here, although the ALJ noted that Plaintiff performed daily chores, the ALJ failed to examine whether these tasks were transferable to the workplace, and failed to specifically link the evidence of Plaintiff's daily activities to a conclusion that Plaintiff's testimony lacked credibility.  Thus no inference can be drawn from the ALJ's mention of Plaintiff's daily activities.  *Gonzalez*, 914 F.2d at 1201 ("While the ALJ's failure to link his discounting of the appellant's pain testimony to the appellant's testimony about his daily activities may seem to be a minor error, we are wary of speculating about the basis of the ALJ's conclusion - especially when his opinion indicates that the conclusion may have been based exclusively upon an improper reason.").

In sum, the Court finds the ALJ failed to articulate a sufficient basis for rejecting Plaintiff's pain testimony.  Accordingly, the Court concludes the ALJ's findings are unsupported by substantial evidence based on the record as a whole.

/ / /

/ / /

**5.    Remand For Further Proceedings Is Appropriate**

In social security cases, the Court has discretion to remand a case either for additional evidence and findings, or to award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. When, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted). *See also Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Here, the ALJ did not have the opportunity to consider Dr. Alvarez-Martinez's treatment records or to evaluate Dr. Ahadian's supplemental opinion. Therefore, the Court finds that remand for further proceedings is appropriate. *See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("While we properly may consider the additional evidence presented to the Appeals Council in determining whether the Commissioner's denial of benefits is supported by substantial evidence, it is another matter to hold on the basis of evidence that the ALJ has had no opportunity to evaluate that Appellant is entitled to benefits as a matter of law. The appropriate remedy in this situation is to remand this case to the ALJ.").

On remand, the ALJ must accord controlling weight to Dr. Alvarez-Martinez and Dr. Ahadian's opinions if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques, and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). If the ALJ determines that either opinion is not well-supported, or is inconsistent with the record, the ALJ must address the weight to accord the opinion using all of the factors provided in 20 C.F.R. § 404.1527.

The Court finds the ALJ must also reconsider the credibility determination. As indicated above, the ALJ found Plaintiff's statements regarding her symptoms and

limitations "are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 18.) The ALJ relied largely on the medical expert, Dr. Schosheim's opinion that Plaintiff had an RFC to perform sedentary work, and rejected the treating physicians' opinions that gave Plaintiff a more restricted RFC. The additional evidence provided to the Appeals Council, however, includes treatment records from Dr. Alvarez-Martinez and an updated opinion from Dr. Ahadian. Should the ALJ give either of these opinions controlling weight on remand, it may change the RFC that the ALJ will ultimately adopt. Therefore, when all the evidence is evaluated on remand, Plaintiff's pain testimony may be deemed consistent with the RFC. Therefore, the Court finds the ALJ's decision on remand must also include an assessment of Plaintiff's credibility in light of the additional medical evidence. Moreover, the ALJ failed to articulate clear and convincing reasons for rejecting Plaintiff's testimony. Thus, remand is necessary for the ALJ to either accept Plaintiff's testimony or provide specific findings for rejecting her pain testimony. *See Gonzalez*, 14 F.2d at 1202 (stating that where the ALJ identifies evidence that may have been the basis for his credibility finding, but the court cannot tell if it was the basis "a remand is the proper disposition").

## VI. CONCLUSION

After a thorough review of the record in this matter and based on the foregoing analysis, this Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **GRANTED**, Defendant's Cross-Motion for Summary Judgment be **DENIED**, and the case be **REMANDED** for further proceedings.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(d).

IT IS HEREBY ORDERED that **no later than June 24, 2013**, any party may file and serve written objections with the Court and serve a copy on all parties. The documents should be captioned "Objections to Report and Recommendation."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IT IS FURTHER ORDERED that any reply to the objections shall be filed and served **no later than ten days** after being served with the objections.  The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED:  June 10, 2013

DAVID H. BARTICK
United States Magistrate Judge